UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| EDWARD STEAKLEY, | ) |
| | ) |
| Petitioner, | ) |
| | ) Case No. 1:05-cv-16 |
| | ) (1:03-cr-44) |
| v. | ) *Edgar* |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM

Petitioner Edward Steakley has filed a motion to vacate, set aside, or correct a sentence

pursuant to 28 U.S.C. § 2255. [Court Doc. No. 1]. The Government opposes Steakley's motion.

[Court Doc. No. 6]. As stated *infra*, this court has concluded that Steakley's Section 2255

motion is without merit and will be **DENIED**. Steakley also brings a number of related motions

in conjunction with is Section 2255 motion. [Court Doc. Nos. 2, 3, 4, 5]. These motions will

also be **DENIED**.

## I. Procedural and Factual History

On February 12, 2003, a United States grand jury sitting for the Eastern District of

Tennessee, Chattanooga Division, returned a twenty-one count indictment against Steakley

charging him with twenty-one counts involving the sale and distribution of oxycontin,

hydrocodone, marijuana, Xanax, and cocaine hydrochloride in violation of 21 U.S.C. §§

841(a)(1), 841(b)(1)(C), (b)(1)(D), and 846. The indictment alleged the sale of illegal or

controlled substances from April 2001 to January 2003.

The following facts are taken from the PSR prepared by the United States Probation

Office:

26. On April 16, 2001, agents working with the Chattanooga, Tennessee Police Department's Special Investigations Unit (CPDSIU) met with a confidential informant (CI) at a predetermined location in Chattanooga, Tennessee. The CI agreed to assist the agents in a targeting effort against Edward Steakley for the illegal distribution of controlled substances. The CI met Mr. Steakley at his residence located at 1007 West Elmwood Drive, Chattanooga, Tennessee. Mr. Steakley gave the CI seven (7) Xanax pills and one (1) marijuana cigarette. He informed the CI that he would sell marijuana to him for $120 per ounce.

PSR, ¶ 26. Over the course of the next year and a half, the CI purchased numerous controlled

substances and illegal drugs. Finally, on January 8, 2003, federal officers arrested Steakley. The

PSR indicates that:

On January 8, 2003, the CI met with Mr. Steakley and discussed a possible trade for some marijuana. The defendant was going to give the CI three automobiles and one thousand dollars ($1,000) worth of Oxycontin pills for a large amount of marijuana. A reverse sting operation was set up by the CPDSIU to apprehend the defendant when the trade was made. On January 9, 2003, Mr. Steakley and the CI drove to Dunlap, Tennessee. Mr. Steakley and the CI met an undercover police officer in the parking lot of the BI-LO grocery store where the defendant relinquished the titles to three different vehicles to the undercover police officer. The police officer then showed Mr. Steakley approximately 22 pounds of marijuana in the trunk of his car. Mr. Steakley agreed to the trade and stated that he would get the one thousand dollars ($1,000) worth of Oxycontin on January 10, 2003. At that point, the defendant was taken into custody and placed in the Sequatchie County, Tennessee Jail under a federal hold.

PSR, ¶ 33.

On March 10, 2003 Steakley, through his counsel, issued a notice of his intent to pursue

the insanity defense. [Court Doc. No. 15]. He also moved for a psychiatric examination,

claiming that Steakley had been diagnosed with paranoid schizophrenia. [Court Doc. No. 16].

The motion claimed that Steakley had been unable to take prescribed medications since his

imprisonment and that he had been a patient of various mental health organizations. *Id.*

On March 13, 2003 the court issued an order for Steakley to obtain a mental competency

-2-

evaluation. [Court Doc. Nos. 18, 19]. On April 3, 2003 the government delivered Steakley to

the Federal Medical Center in Lexington, Kentucky ("FMC") for a mental health evaluation.

[Court Doc. No. 21].

While at FMC, Dr. Melissa Peters, a Forensic Psychologist, conducted a mental

evaluation of Steakley and explained her findings in a Forensic Report. [Court Doc. No. 22].

Steakley stayed at the FMC from April 4 to May 20, 2003. Dr. Peters reviewed several police

records, as well as medical records during the course of her evaluation. She issued the

Minnesota Multiphasic Inventory-Second Edition (MMPI-2) and the Wechsler Adult

Intelligence Scale-Third Edition (WAIS-III). She also interviewed Steakley five times.

Following her evaluation, Dr. Peters concluded:

Mr. Steakley is not diagnosed with a severe mental illness which would render
him out of contact with reality. Based on the available information, Mr. Steakley
was not suffering from a mental disease or defect at the time of the alleged
offense. Mr. Steakley reported a history of treatment with Trazodone and Paxil.
However, it is unclear why these medications were prescribed to him. Moreover,
Trazodone and Paxil are anti-depressants and help to improve sleep. They are not
designed to treat psychosis. Moreover, there is no indication he ever suffered
from hallucinations, delusions, paranoia, or any other form of psychosis. As such,
there is no indication he ever suffered from a severe mental disease or defect
which would have interfered with his ability to appreciate the nature and
consequences of his actions. It does not appear Mr. Steakley suffers from any
ongoing psychosis. Mr. Steakley clearly indicated he understood, both now and
at the time of the alleged offense selling drugs is illegal. . . .
In summary, Mr. Steakley does not suffer from a mental disease or defect which
would affect his ability to appreciate the nature, quality, or wrongfulness of his
actions related to the alleged offense. During the time period of the alleged
offense, Mr. Steakley was engaged in goal-directed activity and did not appear to
be suffering from any form of psychosis. Furthermore, he has clearly
demonstrated the cognitive ability to learn and retain new information and make
judgments regarding the legality of certain behavior. Based upon the available
information, it is my opinion Mr. Steakley was **not** suffering from a severe mental
disease or defect such that he was unable to appreciate the nature and quality or
the wrongfulness of his acts.

-3-

[Court Doc. No. 22]. On September 10, 2003 this court issued a memorandum and order finding

that Steakley was competent to withstand trial. [Court Doc. No. 28].

On October 22, 2003 Steakley signed a plea agreement agreeing to plead guilty to Count

1 of the indictment. Count 1 states:

> The Grand Jury charges that from in or about April, 2001, to in or about January, 2003, in the Eastern District of Tennessee, the defendant EDWARD STEAKLEY, and others known and unknown to the grand jury, did combine, conspire, confederate and agree to knowingly, intentionally, and without authority violate Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C) and (b)(1)(D); that is, distribute oxycontin, hydrocodone and marijuana, Schedule I, II and IV controlled substances, in violation of Title 21, United States Code, Section 846.

[Court Doc. No. 8]. The government agreed to dismiss the remaining twenty counts against

Steakley at the hearing on sentencing. *Id.*

The plea agreement also states that:

> The defendant expressly waives the right to file any motions or pleadings pursuant to 28 U.S.C. § 2255 on any ground, other than ineffective assistance of counsel, prosecutorial misconduct, or subsequent change in the interpretation of the law which may affect his case. Thus, the defendant knowingly, intentionally, and voluntarily waives the right to collaterally attack the plea being offered in the instant case. The defendant further acknowledges that a breach of this clause of the plea agreement (like the defendant's breach of any other clause of the plea agreement) would leave the United States free to withdraw from the plea agreement.

[Court Doc. No. 31, Plea Agreement, ¶ 7].

Steakley pled guilty before this court in a plea hearing on October 22, 2003.[1] The court

reviewed the evidence regarding Steakley's competence to enter a guilty plea, including Dr.

Peters' prior testimony and conclusions regarding Steakley's mental competence. During the

---

[1] Although it is not a part of the record submitted by the parties, and it is not part of the official docket in this case, this court has obtained a copy of the transcript of the plea proceeding on October 22, 2003. A copy of this transcript is attached as an appendix to this opinion.

hearing Steakley informed this court that by pleading guilty, he understood he was giving up the

right to a jury trial, the right to a presumption of innocence, the right to confront witnesses, the

right to counsel at trial, the right to remain silent, and the right to subpoena witnesses.

Appendix, pp, 3-5. Then the court inquired whether "[a]nybody force you or compelled you or

put any pressure on you to plead guilty?" *Id.*, p. 5. Steakley responded "No, sir" to this

question. *Id.* The Assistant U.S. Attorney then summarized the terms of the plea agreement for

the court. During his summary, he stated,

> Paragraph 7 states that the defendant expressly waives the right to file any motion
> or pleading pursuant to 28 U.S.C. Section 2255 on any ground except other than
> ineffective assistance of counsel, prosecutorial misconduct or a subsequent
> change in the interpretation of the law which may affect his case, therefore, he is
> knowingly, intentionally, and voluntarily waiving his right to collaterally attack
> the plea.

*Id.*, p. 6. After the summary, the court asked the following questions of Steakley:

> The Court: Mr. Steakley, have you read your plea agreement?
> The Defendant: Yes, sir. Several times.
> The Court: Okay. And did you hear what [the Assistant U.S. Attorney] just
> said about it here in court?
> The Defendant: Yes, sir.
> The Court: And is what he said, is that, just in general, is that the way you
> understand your agreement?
> The Defendant: Yes, sir.

*Id.* at p. 7. Then this court reiterated the waiver provision of Steakley's plea agreement:

> The Court: Okay. One other point that was made here in the agreement that
> [the Assistant U.S. Attorney] mentioned is that you are giving up in this
> agreement one of the ways that you have to challenge your conviction because
> you are, it says here in the agreement that you're giving up your right to file a
> motion or pleading pursuant to 28 United States Code, Section 2255, sometimes
> we call this a habeas corpus petition. You're giving up your right to do that here
> except for certain reasons that are set out here in the plea agreement. Do you
> understand that?
> The Defendant: What's the habeas corpus, what's that mean?
> The Court: That means, that's another way to challenge the validity of your

-5-

conviction. Actually, it means deliver the body, if you really want to know what it means in Latin, but it's a way you can, it's a way that you can appeal.

The Defendant: Yeah.

The Court: Okay. And you're giving up your right to do that here. Do you understand that?

The Defendant: Yeah.

*Id.* at pp. 8-9.

Following the summary of the plea agreement, the Assistant U.S. Attorney summarized

the facts of the case. Appendix, pp. 13-14. Then the following colloquy between the court and

Steakley occurred:

The Court: All right. Mr. Steakley, did you hear what [the Assistant U.S. Attorney] said about the facts there?

The Defendant: Yes, sir.

The Court: And are those facts true?

The Defendant: Very true, sir.

The Court: And are you offering to plead guilty because you're guilty?

The Defendant: I'm guilty. Very guilty.

The Court: Okay. The Court finds that this defendant is competent and that he is capable of entering an informed plea. The Court finds that his plea is voluntary, knowledgeable and it is supported by an independent basis in fact which does indeed contain all of the essential elements of the offense charged here in Count 1. And he is adjudged guilty on that count. . . .

*Id.* at pp. 14-15.

The Pre-sentence Report ("PSR") determined that Steakley should receive a total offense

level of 31 and a criminal history category of VI. His sentencing guidelines were 188 to 235

months. On January 26, 2004 Steakley appeared before the court for sentencing. He received a

sentence of 188 months of imprisonment and six years of supervised release on Count One.

[Court Doc. No. 36]. The Court dismissed Counts Two through Twenty-One. *Id.*

Steakley did not appeal his sentence. He timely filed his Section 2255 motion. In his

motion Steakley raises several arguments. He claims the following somewhat indecipherable

-6-

twelve legal errors: (1) that the indictment was defective by charging him with conspiracy with a government informant; (2) that the court applied impermissible sentence enhancements in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 542 U.S. 296 (2004); (3) that a sentence enhancement for a firearm was in violation of *Apprendi* and *Blakely*; (4) that federal jurisdiction was improper pursuant to the "silver platter doctrine" and that Steakley's prosecution under federal law was improper sentence entrapment; (5) that Steakley was denied prescription medications rendering him mentally incompetent to enter into the plea agreement; (6) that the 21 U.S.C. § 851 information filed by the government was flawed; (7) that the indictment failed to state the quantities of illegal and controlled substances and the names of agent informants as required under *Apprendi*; (8) "that the sentence entrapment procedures to appropriate additional enhancements under relevant conduct was in violation of *Blakely v. Washington*"; (9) "that the reverse sting operation was illegal as it was the product of sentencing entrapment to give the case to the federal government for prosecution"; (10) ineffective assistance of counsel; and (11) "that the law enforcement officers who created this case knowingly provided narcotics to their agent informant's [sic] to provide to petitioner to sell, to establish sentence entrapment and a reverse sting was illegal and a violation of petitioner's rights."

[Court Doc. No. 42].

## II. Standard of Review

28 U.S.C. § 2255 states in part:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed

in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255; *see also, Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003). As the Sixth Circuit has held, "[i]n order to prevail upon a section 2255 motion, the petitioners 'must allege one of three bases: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" *Moss*, 323 F.3d at 454 (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)).

Petitioner Steakley failed to use any avenues of direct appeal, and he is now seeking collateral review for what he claims to have been errors of constitutional magnitude. The Sixth Circuit has held that "[o]n collateral review, a trial error is deemed harmless unless it had a 'substantial and injurious effect or influence in determining the jury's verdict. It is a 'well-settled principle that to obtain collateral review relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal.'" *Fair v. United States*, 157 F.3d 427 (6th Cir. 1998) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *United States v. Frady*, 456 U.S. 152, 166 (1982)). Petitioners must "show a 'fundamental defect' in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair*, 157 F.3d at 430 (quoting *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994)).

Further,

[w]hen a section 2255 petitioner has procedurally defaulted his contentions by failing to assert them on direct appeal or via a previously litigated habeas application, he must further either prove (1) that he possessed good cause for failing to do so and would suffer actual prejudice if his averments are deemed

-8-

precluded, or (2) that he is actually innocent of the subject offense.

*Fair*, 157 F.3d at 430 (citing *Bouseley v. United States*, 523 U.S. 614, 622, 118 S.Ct. 1604, 1611 (1998) (other citations omitted)).

## III. Analysis

The government points out that Steakley waived his right to file a motion to vacate, set aside, or correct a sentence under Section 2255 in his plea agreement. Paragraph 7 of the plea agreement states that "[t]he defendant expressly waives the right to file any motions or pleadings pursuant to 28 U.S.C. § 2255 on any ground, other than ineffective assistance of counsel, prosecutorial misconduct, or subsequent change in the interpretation of the law which may affect his case." [Court Doc. No. 31, ¶ 7].

The Sixth Circuit has held that such waivers are valid. The Sixth Circuit has noted that: "'[i]t is well settled that a defendant in a criminal case may waive 'any right, even a constitutional right,' by means of a plea agreement." To be a valid waiver the defendant must enter into the waiver agreement knowingly, intelligently, and voluntarily." *Davila v. United States*, 258 F.3d 448 (6th Cir. 2001) (quoting *United States v. Fleming*, 239 F.3d 761, 763 (6th Cir. 2001)). "The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160 (1970)). The Supreme Court has noted that "[a] plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving . . . or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt."

-9-

*Henderson v. Morgan*, 426 U.S. 637, 645 n.13, 96 S.Ct. 2253 (1976) (citations omitted).

A valid guilty plea "not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). A guilty plea will be considered knowing and voluntary where a defendant "actually *does* understand the significance and consequences of a particular decision" and where the "decision is uncoerced." *Godinez v. Moran*, 509 U.S. 389, 401 n. 12, 113 S.Ct. 2680 (1993); *United States v. Carpenter*, 25 F.App'x 337 (6th Cir. 2001).

In this action the record reveals that Steakley informed the court that he understood the plea agreement and that he understood he would be waiving his right to bring a motion pursuant to Section 2255, except for the three excluded areas of ineffective assistance of counsel, prosecutorial misconduct, and a change in intervening law. The transcript from the plea hearing clearly indicates that Steakley knowingly, voluntarily, and intelligently waived his right to appeal his plea pursuant to a Section 2255 motion except for a limited number of reasons. He informed this court that he had read the plea agreement several times and that he understood he was giving up habeas appeal rights. Appendix, pp. 7-9. He also informed the court that no one had pressured him into signing the agreement. *Id.* at p. 5. The transcript further indicates that Steakley affirmatively admitted on two separate occasions during the hearing that he was "very guilty." *Id.* at pp. 4, 15. The court concludes that the waiver of the right to file a Section 2255 motion on various grounds is valid because Steakley entered into the waiver voluntarily and knowingly.

This Court also reviewed whether Steakley was competent to stand trial, and it concluded that he did not have any mental defect that rendered him incompetent. Dr. Peters' report

confirms this conclusion. The Supreme Court has held that the standard for competency to plead guilty is the same as the standard regarding competency to stand trial. *See Godinez v. Moran*, 509 U.S. 389, 398-99, 113 S.Ct. 2680 (1993); *Warren v. Lewis*, 365 F.3d 529, 534 n.3 (6th Cir. 2004). Thus, Steakley has waived the right to bring a Section 2255 motion on any but the three excluded areas. Steakley does not claim prosecutorial misconduct. The only claims that he did not waive in his plea agreement are his claims of ineffective assistance of counsel and that his sentence violates a change in intervening law pursuant to *Booker* and *Blakely*.

Petitioner claims in his tenth ground for appeal that his counsel provided ineffective assistance. He did not waive his right to raise this issue in a Section 2255 motion. Criminal defendants are entitled to the assistance of counsel for their defense pursuant to the Sixth Amendment of the U.S. Constitution. U.S. Const. amend. VI; *see also*, *Moss*, 323 F.3d at 454. A right that is derivative of the right to counsel is the right to have effective assistance of counsel. *Moss*, 323 F.3d at 454; *see also, Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). The "benchmark of effectiveness 'must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Hofbauer*, 228 F.3d 689, 702 (6th Cir. 2000) (quoting *Strickland*, 466 U.S. at 686).

In *Hofbauer* the Sixth Circuit explained the two-part test for ineffective assistance of counsel as described in *Strickland*:

First a defendant must show that counsel's performance was 'deficient,' involving 'errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.' . . . . Second, even if counsel's performance is deemed deficient, a defendant must show that those deficiencies were prejudicial to the defense. To make this showing, the defendant must demonstrate that there 'is a reasonable probability that, but for counsel's unprofessional errors,

-11-

the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'

*Hofbauer*, 228 F.3d at 702 (quotations omitted).

Within the context of a guilty plea, the Sixth Circuit has recently noted:

In order to show that deficient performance prejudiced the defense when a defendant pleads guilty, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." A defendant can meet this burden by showing, for example, that there was an "affirmative defense," such as an insanity defense, that "likely would have succeeded at trial," or by showing that he or she was not competent to plead guilty. A defendant is competent if he or she "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "has a rational as well as factual understanding of the proceedings against him."

*Stewart v. Morgan*, 2007 WL 1451974 *4 (6th Cir. 2007)(quoting *Hill v. Lockhart*, 474 U.S. 52,

59 (1985); *Dusky v. United States*, 362 U.S. 402, 402 (1960) and citing *Jermyn v. Horn*, 266 F.3d

257, 283 (3d Cir. 2001); *Eddmonds v. Peters*, 93 F.3d 1307, 1317 (7th Cir. 1996)).

In this action Petitioner argues that his attorney "failed to have an independant [sic]

psychiatrist examine Petitioner to validate his mental condition and susceptibility to being used

for setting up for a reverse sting. In that Petitioner has been placed back on

psychotropics–which he had been denied, and that Petitioner's attorney failed to argue the

foregoing issues/grounds herein [sic]." [Court Doc. No. 42]. It is clear from the record that

Steakley's counsel was instrumental in exploring a defense of insanity and in moving for a

mental evaluation at FMC for six weeks. Further, his counsel arranged for Steakley's doctor, Dr.

Evangelito Garingan, to testify at Steakley's competency hearing. [Court Doc. No. 28].

Although Dr. Garingan testified that he believed Steakley suffered from paranoid schizophrenia,

he could not say whether the defendant was competent to stand trial. *Id.* Dr. Peters' report

-12-

indicated her belief that Steakley was competent to stand trial, and this court determined that Steakley was competent to withstand trial. *Id.*

The fact that Petitioner's counsel did not succeed in establishing that he was not competent to withstand trial or enter into a plea agreement does not change the fact that Petitioner's counsel provided effective assistance. There is no evidence in the record that Petitioner had a valid prescription for any medications without which he would be incapable of rendering a guilty plea. Although Steakley may have been addicted to numerous illegal substances and controlled drugs based on his own reported daily use of such substances, there is no indication in the record that he had a valid prescription for any such psychotropic medications. Further, Dr. Peters indicated in her report that "[o]verall, Mr. Steakley neither displayed nor endorsed any symptoms suggestive of a severe mental illness." [Court Doc. No. 29]. Dr. Peters noted that "Mr. Steakley reported daily use of cocaine and prescription drugs (without valid prescription) for many years. Mr. Steakley reportedly took Xanax, Hydrocodone, and Lortabs regularly without a valid doctor's prescription for these medications." *Id.*

The record indicates that Petitioner represented to the court that he was competent to enter a plea of guilty and that he entered the plea knowingly and voluntarily. Such representations of competency "constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Lasiter v. Thomas*, 89 F.3d 699, 702 (10th Cir. 1996). Further, a petitioner's conclusory statement that he could not enter a knowing and voluntary plea without medication does not overcome sworn statements in court indicating that he was knowingly and voluntarily pleading guilty. *See e.g., United States v. Trusdale*, 38 F. App'x 485, 486 (10th Cir. 2002).

-13-

Generally, federal courts have determined that in a case in which "the defendant indicates that he is taking medication or has a condition that may require medication, the court should ensure that defendant retains the ability to understand the proceedings and enter a truly voluntary plea." *United States v. Frayler*, 229 F.3d 1136 *3 (2d Cir. 2000). However, in this case there is no evidence in the record indicating that Petitioner had a valid prescription for medication that would be necessary to enable him to render a valid guilty plea. The evidence also demonstrates that defendant understood the proceeding. Therefore, Petitioner's argument that he was without necessary prescribed medications that his counsel failed to obtain for him is without merit.

Further, Steakley's counsel succeeded in negotiating a favorable plea for the defendant that eliminated twenty of the counts in the indictment. The plea agreement also contained provisions for downward departures for acceptance of responsibility and rendering substantial assistance to the government. [Court Doc. No. 31]. The PSR indicates that Steakley's base offense level was only 16, but due to his criminal history, Steakley's total offense level became 31. Thus, Steakley himself was responsible for the magnitude of the total offense level based on his own criminal history.

Steakley has failed to show that, but for one of counsel's errors, there is a reasonable probability he would have gone to trial. Steakley's insanity defense was unlikely to succeed because Dr. Peters found him mentally competent and would have testified to her opinion at trial. There is no other affirmative defense in the record that Steakley claims would have been likely to succeed before a jury. As discussed *supra*, Steakley cannot demonstrate that he was not competent to plead guilty. Steakley has failed to demonstrate that any alleged error by his counsel was so deficient that it changed the outcome of the proceeding; therefore, any claim of

-14-

ineffective assistance of counsel must fail.

Steakley further argues that *United States v. Booker*, 543 U.S. 220 (2005) and *Blakely v. Washington*, 542 U.S. 296 (2004) also apply to his claims. In *Blakely* the Supreme Court held that the defendant's sentence violated the defendant's Sixth Amendment right to a jury trial where the court sentenced him to prison for more than three years beyond the maximum sentence for the crime to which he confessed based on a disputed issue of fact. 542 U.S. at 313-314. In *Booker* the Supreme Court invalidated provisions of the Sentencing Reform Act that made the United States Sentencing Guidelines mandatory, instead making the Guidelines advisory. 543 U.S. at 244-245. The Sixth Circuit has since clarified that *Blakely* claims are now *Booker* claims and *Booker* claims do "not apply retroactively to cases already final on direct review." *Humphress v. United States*, 398 F.3d 855, 857 (6ᵗʰ Cir. 2005). Thus, *Booker* does not apply to Steakley's Section 2255 motion.

Further, although Steakley claims that his sentence violates *Booker* because it rests on Count One of the indictment which did not contain any specific drug quantities, the Plea Agreement specifically states that "Mr. Steakley further acknowledges that he understands that the Court will determine the appropriate sentence under the Sentencing Guidelines and that this determination will be based upon the entire scope of his criminal conduct, his criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines." [Court Doc. No. 31, Plea Agreement, ¶ 2]. Thus, Steakley agreed that his sentence would be based on the entirety of the conduct alleged in the other counts in the indictment. The PSR further demonstrates that the recommended sentence, which the court imposed, was based only on the known drug quantities and not on the unknown drug quantities listed in Counts Six, Seven,

-15-

Eight, Ten, and Eleven of the Indictment. PSR, ¶ 35. Thus, Steakley's claims pursuant to *Booker* and *Blakely* must fail.

## C.     Steakley's Additional Motions

In addition to his Section 2255 motion, Steakley also moves for leave to appeal in forma pauperis [Court Doc. No. 2], moves for discovery [Court Doc. No. 3], moves to stay the Section 2255 motion until he receives discovery [Court Doc. No. 4], and moves to appoint counsel [Court Doc. No. 5].

As the Sixth Circuit has noted, "'[a]ppointment of counsel in a civil case is not a constitutional right.' It is a privilege that is justified only by exceptional circumstances." *Lavado v. Keohane*, 992 F.2d 601, 605-06 (6th Cir. 1993) (quoting *Mekdeci v. Merrell National Laboratories*, 711 F.2d 1510, 1522 n.19 (11th Cir. 1983)). A district court has the discretion to appoint counsel for a civil litigant who is indigent. *Lavado*, 992 F.2d at 604; *see also,* 18 U.S.C. § 3006A(a)(2)(B). However, "[a]ppointment of counsel pursuant to 28 U.S.C. § 1915(d) is not appropriate when a *pro se* litigant's claims are frivolous or when the chances of success are extremely slim." *Lavado*, 992 F.2d. at 606 (citing *Henry v. City of Detroit Manpower Dep't.*, 739 F.2d 1109, 1119 (6th Cir. 1984)). This court concludes that because Steakley has issued a valid waiver of most of the grounds for his Section 2255 motion, the remaining legal issues are straightforward and do not require the appointment of counsel for him. This court further finds that Steakley's claims are frivolous and that his chances for success are slim. Therefore, the court will DENY Steakley's motion for the appointment of counsel.

Steakley further requests discovery he claims relates to his motion. Courts in this Circuit have explained the discovery rights of habeas prisoners:

"Habeas prisoners have no right to automatic discovery. Rule 6 of the Rules
Governing Section 2255 Proceedings requires that a party requesting discovery
show good cause and provide reasons for the requested discovery. Such a
showing requires 'specific allegations of fact' that demonstrate to a court that
additional discovery may enable the defendant to show that he is entitled to relief.
A conclusory statement that 'good cause' exists is insufficient. The moving party
has the burden of establishing the materiality of the requested discovery. Rule 6
does not permit a defendant to embark upon a 'fishing expedition' based solely on
conclusory allegations.

*Till v. United States*, No. 1:07cv55, 2007 WL 1704397 (W.D. Mich. June 11, 2007)(quoting

*Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004)).

In his motion for discovery, Steakley seeks twelve different types of documents,

including the plea hearing transcript, the sentencing transcript, the plea agreement, government

witness lists and exhibit lists, lab reports, "Brady materials," "lists of deals given to prospective

government/state witnesses", the superceding indictment, and "all written or recorded statements

of the defendant." Of these requested documents, the only ones which the court finds relevant to

Steakley's motion are the plea hearing transcript which is attached as an appendix to this

opinion, and the plea agreement. Steakley has failed to demonstrate "good cause" for his

contention that any of the requested materials may enable him to demonstrate that he is entitled

to relief. Because Steakley has signed a valid waiver of the right to bring a Section 2255 motion

on most of the grounds he has raised, the requested materials will not help him. Further,

Steakley has not demonstrated "good cause" for his belief that the requested materials will aid

him on the remaining viable claims at issue here. Therefore, Steakley's motion for discovery

will be DENIED. Steakley's motion to stay these proceedings pending release of his requested

discovery will also be DENIED. Steakley's motion to proceed in forma pauperis is denied as

moot because he does not need to file a filing fee to proceed on a Section 2255 motion. *See e.g.,*

-17-

*Marcado v. United States*, No. 1:07cv657, 2007 WL 2084347, *4 (N.D. Ohio July 19, 2007).

## V. Conclusion

For the reasons stated *supra*, Mr. Steakley's petition for writ of habeas corpus pursuant to

28 U.S.C. § 2255 is **DENIED**. This matter is dismissed with prejudice.

A separate judgment will enter.

_____*/s/ R. Allan Edgar*_____
R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE

-18-

# APPENDIX A

10-22-03 Steakley.txt

```
EDWARD STEAKLEY,                    )
                                    )
                   Petitioner,      )
                                    )      Case No.  1:05-cv-16
                                    )      (1:03-cr-44)
v.                                  )      Edgar
                                    )
UNITED STATES OF AMERICA,           )
                                    )
                   Respondent.      )
```
                                                                    1

        1
        2            THE CLERK:  Criminal Action 1-2003-CR-44, United
        3    States of America versus Edward Steakley.
        4            THE COURT:  If you would, come up to the podium here,
        5    Mr. Steakley.
        6            Status of the case, Mr. Piper.
        7            MR. PIPER:  Mr. Steakley is here to plead guilty
        8    pursuant to a plea agreement to Count 1 charging a conspiracy
        9    to distribute numerous controlled substances, the most serious
       10    would be under 841(a)(1), and (b)(1)(C).  And there is a plea
       11    agreement in the case that I have filed, Your Honor.  I have a
       12    copy of that if the Court would like it.
       13            THE COURT:  Let's see if I've got a copy.  Do I have
       14    a copy of it?
       15            MR. PIPER:  The original is probably in the court
       16    file, Your Honor.  I filed it on October 16.
       17            THE COURT:  Here's the court file.
       18            MR. PIPER:  As luck would have it, Your Honor, I
       19    brought an unsigned original over here if the court would like
       20    for us to sign it.  I have a file stamped copy, Judge.
       21            THE COURT:  Well, you got a file stamped copy, why
       22    don't you sign it.

                                  Page 1

23          MR. PIPER: I've got an original, I can have him sign

24     that.  Same thing.

25               THE COURT:  I've got a copy of it here.  Okay.  If

                       UNITED STATES DISTRICT COURT

☐

                                                                    2

1    you would, please, sir, raise your right hand.

2               (Whereupon, the defendant was sworn.)

3               THE COURT:  Your name, sir, is Edward Steakley?

4               THE DEFENDANT:  Yes, sir.

5               THE COURT:  And, Mr. Steakley, how old are you?

6               THE DEFENDANT:  Fifty.  I'll be 51 here in a couple

7    of days.

8               THE COURT:  How much education do you have.

9               THE DEFENDANT:  Graduated from high school.

10               THE COURT:  Ever been treated for mental illness?

11               THE DEFENDANT:  Yes, sir.

12               THE COURT:  When was that?

13               THE DEFENDANT:  Past probably 10 years.

14               THE COURT:  Okay.

15               MR. EBERLY:  Your Honor for the court's information,

16    I believe you will recall that competency hearing we had and

17    the doctor who testified, that was the doctor that treated him.

18               THE COURT:  Okay.  So you've been -- we've been

19    through all this before.

20               MR. EBERLY:  That would explain --

21               THE COURT:  Oh, yeah.

22               MR. EBERLY:  -- his history.  I think you can recall

23    it.

24               THE COURT:  Yeah.  Okay.  Let me take a minute to

25    review this.

                            Page 2

```
1               (Brief pause.)
2               THE COURT:  Dr. Peters testified by video.
3               MR. EBERLY:  And a local doctor, he was that doctor
4   has been the treating physician for quite a while.
5               THE COURT:  Okay.  Well, let me ask you this.  Do you
6   consider the defendant competent to enter a plea here today?
7               MR. EBERLY:  I do, Your Honor.
8               THE COURT:  Okay.  And have you had any drugs,
9   prescription or otherwise, Mr. Steakley, in the last three
10  days?
11              THE DEFENDANT:  Just a Motrin 800, just for sinus
12  infection.
13              THE COURT:  Okay.  What about any alcohol?  Had any
14  alcoholic beverage?
15              THE DEFENDANT:  No, sir.
16              THE COURT:  Okay.  Have you had a chance to discuss
17  the facts of this case with Mr. Eberly?
18              THE DEFENDANT:  Yes, sir.
19              THE COURT:  Are you satisfied with his representation
20  of you so far?
21              THE DEFENDANT:  Very much.
22              THE COURT:  Okay.  All right.  Mr. Steakley, you have
23  a number of rights I want to explain them to you at this time
24  to make sure that you understand your legal situation here.  Do
25  you understand that you can if you wish, of course, plead not
```

10-22-03 Steakley.txt

1   guilty?
2           THE DEFENDANT: Yes, sir.
3           THE COURT: And do you understand that you have a
4   right to a jury trial?
5           THE DEFENDANT: Yes, sir.
6           THE COURT: Do you understand that if you plead
7   guilty you're giving up your right to a jury trial?
8           THE DEFENDANT: Yes, sir.
9           THE COURT: Under the law, there is a presumption
10  that you are innocent. If you were to go to trial, this
11  presumption would only be overcome if the government were to
12  present evidence here in court which would prove by beyond a
13  reasonable doubt that you are in fact guilty.
14          THE DEFENDANT: Yes, sir.
15          THE COURT: But if you plead guilty here today,
16  before you leave here, you'll have to tell me that you're
17  guilty which means that you'll be giving up your legal
18  presumption of innocence. Do you understand that?
19          THE DEFENDANT: I'm very guilty.
20          THE COURT: Okay. You have a right to confront the
21  witnesses against you. In other words, you have a right to be
22  present in court at any time that witnesses are brought in
23  here. You have a right to ask them questions, cross-examine
24  them. You're giving up that right, also. Do you understand
25  that?

                    UNITED STATES DISTRICT COURT

□

                                                                5

1           THE DEFENDANT: Yes, sir.
2           THE COURT: And you have the right to be represented
3   by counsel, of course, throughout these proceedings. And you
                            Page 4

    4    now, you know, we have counsel here for you, but if you plead

    5    guilty there won't be a trial in the case and, of course, you

    6    won't have Mr. Eberly or any other attorney representing you at

    7    a trial.  Do you understand that?

    8              THE DEFENDANT: Yes, sir.

    9              THE COURT: You also have a right to remain silent

   10   which means that you don't have to say anything at all about

   11   any of the facts here in the case. And if you were to go to

   12   trial as part of your right to remain silent, you would not

   13   have to testify. And we would tell the jury that if you

   14   elected not to testify that they couldn't consider your silence

   15   in any way against you. So, you are giving up this right,

   16   also.  Do you understand that?

   17             THE DEFENDANT: Yes, sir.

   18             THE COURT: And you also have a right to subpoena

   19   witnesses here to court to testify for you. You'll be giving

   20   that up also.  Do you understand that?

   21             THE DEFENDANT: Yes, sir.

   22             THE COURT: So just in general, then, Mr. Steakley,

   23   do you understand that if you plead guilty that there will not

   24   be a trial of any kind in the case?

   25             THE DEFENDANT: Yes, sir.

                       UNITED STATES DISTRICT COURT

☐

                                       6

    1              THE COURT: Anybody force you or compelled you or put

    2    any pressure on you to plead guilty?

    3              THE DEFENDANT: No, sir.

    4              THE COURT: All right. Summarize the plea agreement

    5    for us, Mr. Piper.

    6              MR. PIPER: Yes, Your Honor.

7       Your Honor, this is a cooperation plea agreement in
8   which the defendant is pleading guilty to Count 1 of
9   indictment which charged him with the aforementioned
10  conspiracy.

11      The Court may impose any lawful term of imprisonment
12  up to the statutory maximum, any lawful fine, any lawful term
13  of supervised release.

14      As I stated it is cooperation plea agreement in
15  which the defendant agrees to be completely forthright and
16  truthful and testify truthfully if called upon to do so.

17      The parties currently agree that the defendant is
18  entitled to acceptance of responsibility, and including that
19  third point, Your Honor. Of course, that's not meant to bind
20  the Court. It's only a recommendation.

21      Furthermore, if the defendant provides substantial
22  assistance, the United States may move for a downward
23  departure. The determination as to whether Mr. Steakley has
24  rendered substantial assistance will be made solely by the
25  United States and that would only be a recommendation to Your

UNITED STATES DISTRICT COURT

D

7

1   Honor which the Court may accept or reject in its sole
2   discretion.

3       Paragraph 5 protects Mr. Steakley from any
4   statements or statement he may give, however, it does not
5   protect him from perjury or making a false statement if such
6   should occur.

7       Paragraph 7 states that the defendant expressly
8   waives the right to file any motion or pleading pursuant to 28
9   U.S.C. Section 2255 on any ground except other than

       10    ineffective assistance of counsel, prosecutorial misconduct or
       11    a subsequent change in the interpretation of the law which may
       12    affect his case, therefore, he is knowingly, intentionally and
       13    voluntarily waiving his right to collaterally attack the plea.
       14                Paragraph 8 is the penalty paragraph.
       15                Excuse me. Paragraph 9 is the factual basis.
       16                And Paragraph 10 states that this is the full and
       17    complete agreement between the parties.
       18                THE COURT: Mr. Steakley, have you read your plea
       19    agreement?
       20                THE DEFENDANT: Yes, sir. Several times.
       21                THE COURT: Okay. And did you hear what Mr. Piper
       22    just said about it here in court?
       23                THE DEFENDANT: Yes, sir.
       24                THE COURT: And is what he said, is that, just in
       25    general, is that the way you understand your agreement?
                              UNITED STATES DISTRICT COURT

☐

                                                                        8

        1                THE DEFENDANT: Yes, sir.
        2                THE COURT: And you have signed the agreement, is
        3    that correct?
        4                THE DEFENDANT: Yes, sir.
        5                THE COURT: Now, there are a couple of things about
        6    your agreement that I want to point out to you here,
        7    Mr. Steakley. One of which is that the government has said
        8    that if you do provide substantial assistance to the government
        9    that they will ask me to give you a lower sentence than you
       10    might otherwise get. It's important for you to understand,
       11    however, that it's going to be up to the government to make
       12    that decision. And if they decide that you have not provided

13 substantial assistance, of course, they won't ask me to give

14 you a lower sentence, which means that you won't get a lower

15 sentence. Do you understand that?

16           THE DEFENDANT: Yes, sir.

17           THE COURT: But whether or not you get a lower

18 sentence for your cooperation, you're still bound by your plea

19 agreement, and you will not be able to withdraw your guilty

20 plea if I accept it here today. Do you understand that?

21           THE DEFENDANT: Yes, sir.

22           THE COURT: Okay. There is one exception to that

23 rule and that is that if I reject the plea agreement for some

24 reason, in that event, I will give you an opportunity to

25 withdraw your guilty plea. Do you understand that?

0

1           THE DEFENDANT: Yes, sir.

2           THE COURT: Okay. One other point that was made here

3 in the agreement that Mr. Piper mentioned is that you are

4 giving up in this agreement one of the ways that you have to

5 challenge your conviction because you are, it says here in the

6 agreement that you're giving up your right to file a motion or

7 pleading pursuant to 28 United States Code, Section 2255,

8 sometimes we call this a habeas corpus petition. You're giving

9 up your right to do that here except for certain reasons that

10 are set out here in the plea agreement. Do you understand

11 that?

12           THE DEFENDANT: What's the habeas corpus, what's that

13 mean?

14           THE COURT: That means, that's another way to

15 challenge the validity of your conviction. Actually, it means

16  deliver the body, if you really want to know what it means in
17  Latin, but it's a way that you can, it's a way that you can
18  appeal.
19            THE DEFENDANT:  Yeah.
20            THE COURT:  Okay.  And you're giving up your right to
21  do that here.  Do you understand that?
22            THE DEFENDANT:  Yeah.
23            THE COURT:  Okay.  So, other than what you have been
24  promised in writing in this written plea agreement, has
25  Mr. Piper or anybody from the government promised you anything
                    UNITED STATES DISTRICT COURT

0

10

1   about your case?
2             THE DEFENDANT:  No, sir.
3             THE COURT:  Okay.  We'll we will file the plea
4   agreement and place it under seal.  We have talked about copies
5   of it, here's the original that we just signed, I think.  Is
6   that what this is, isn't it?  Yeah.  Okay.  I handed my copy of
7   it.  Is this the copy we have here today?  That's the original.
8   This is one that I just signed.  Just for the record will you
9   make me another copy of that later?
10            THE CLERK:  Yes, sir.
11            THE COURT:  And stick it in this file.
12            THE CLERK:  Yes, sir.
13            MR. PIPER:  Judge, it's a different procedure than
14  what I've normally done, the Court has encouraged me not to do
15  them at the bar of the court, I've tried to file them, I don't
16  know how else to do it, but I know Mr. Rich files his maybe the
17  clerk's office is slightly confused as to the difference at the
18  way I've been doing it.

19          THE COURT: Yeah. Okay. I found it. I found it.

20   Okay. At this time I'm going to ask the clerk to read Count 1

21   of the indictment and she'll ask you how you plead,

22   Mr. Steakley, guilty or not guilty.

23          THE CLERK: Count 1:

24          The Grand Jury charges that from or in or about

25   April 2001 to in or about January, 2003, in the Eastern

                    UNITED STATES DISTRICT COURT

☐

11

1   District of Tennessee, the defendant, Edward Steakley, and

2   others known and unknown to the grand jury did combine,

3   conspire, confederate, and agree to knowingly, intentionally

4   and without authority violate Title 21, United States Code,

5   Section 841(a)(1) and 841(b)(1)(C) and (b)(1)(D); that is, to

6   distribute Oxycontin, hydrocodone and marijuana, Schedule I,

7   II and IV, controlled substances, in violation of Title 21

8   United States Code, Section 846.

9          Mr. Steakley, what is your plea to Count 1, guilty

10   or not guilty?

11          THE DEFENDANT: Guilty.

12          THE COURT: Okay. Mr. Steakley, you're charged here

13   with conspiracy. Conspiracy is a kind of criminal partnership.

14   And if you were to go to trial, the government would, of

15   course, have to prove its case before you could be convicted.

16          And here the government would have to prove, first

17   of all, that two or more persons conspired or agreed to

18   distribute Oxycontin, hydrocodone, and marijuana. The

19   government doesn't have to prove that it was any kind of

20   formal agreement, just a mutual understanding between two or

21   more people would suffice.
                         Page 10

22      Second, the government would have to prove that you
23   knowingly and voluntarily joined this agreement or this
24   conspiracy. That your involvement here was not an accident,
25   it was not a mistake. And that you knew what the purpose of
                    UNITED STATES DISTRICT COURT

☐

                                                              12

1   it was.
2            Do you think you understand what you're charged with
3   here?
4            THE DEFENDANT: Yes, sir.
5            THE COURT: And knowing what you're charged with, do
6   you still want to plead guilty?
7            THE DEFENDANT: Yes, sir.
8            THE COURT: All right. At this time, Mr. Piper, will
9   you advise Mr. Steakley as to what kind of statutory penalties
10   that he could face?
11           MR. PIPER: Your Honor, there is no mandatory-minimum
12   in this case. However, because the defendant has a prior
13   felony drug conviction a sentence of imprisonment of up to 30
14   years, a fine of up to two million dollars, at least six years
15   of supervised release, and $100 special assessment.
16           THE COURT: All right. With that knowledge,
17   Mr. Steakley, do you still want to plead guilty?
18           THE DEFENDANT: Yes, sir.
19           THE COURT: Okay. Mr. Piper, has the government
20   filed an 851 notice?
21           MR. PIPER: I have a copy if the Court would like to
22   see it.
23           THE COURT: No. That's okay. As long as you did it.
24           MR. PIPER: Filed it at 3:22 today. I've given a
                              Page 11

25    copy to Mr. Eberly.

                    UNITED STATES DISTRICT COURT

░

13

1              THE COURT: Okay. All right. Mr. Steakley, have you
2    discussed with Mr. Eberly the Federal Sentencing Guidelines?
3              THE DEFENDANT: Yes, sir. The best we could with
4    what we had to deal with.
5              THE COURT: Right. That's good. I'm glad that he
6    made that point with you because we don't know for sure what
7    they're going to be.
8              THE DEFENDANT: Yeah.
9              THE COURT: We have to find out what they're going to
10   be. And the way that we do that is that when we're done here
11   today, the probation office will begin writing a presentence
12   report. And in this report, they will set out all of the facts
13   in your case here and tell me a little bit about you and will
14   also set out the guidelines. And those guidelines, as you know
15   from your discussions with Mr. Eberly, will give me a
16   sentencing range in which you should be sentenced.
17             When this report is prepared, you can, of course,
18   read it. You should discuss it with your attorney. If there
19   is any problem that you see with it, you should point those
20   out to him. If there is any difficulties with the report,
21   difficulties with the guidelines, any disputes about those,
22   Mr. Eberly can discuss those with the probation folks. And
23   anything that can't be resolved in that way, then I will have
24   to resolve and decide it on the day that you're actually
25   sentenced here. So, we will not know what your guidelines
                    UNITED STATES DISTRICT COURT

░

1    will be and we will not know what your sentence will be until
2    you actually come here to court to be sentenced. Do you
3    understand that?
4                    THE DEFENDANT: Yes, sir.
5                    THE COURT: Let me just ask you this general question
6    or just advise you of this. Do you understand that if you
7    receive a sentence here under the guidelines that there is no
8    parole, in other words, there won't be any reduction for it
9    except for possibly the only reduction might possibly be some
10   time off for good behavior while you're incarcerated. Do you
11   understand that?
12                   THE DEFENDANT: Yeah.
13                   THE COURT: And, finally, any sentence that you
14   receive here or custody will carry with it a sentence of
15   supervised release. And that means that after you're released
16   from custody you will still be subject to court supervision for
17   a while. And they'll be certain requirements that you will
18   have to meet, for example, no drugs or anything like that. And
19   if you fail to meet those requirements, it is possible that
20   your supervised release could be revoked and that you could go
21   back to custody. Do you understand that?
22                   THE DEFENDANT: Yes, sir.
23                   THE COURT: Mr. Piper, if you would, please state the
24   factual basis behind the government's case.
25                   MR. PIPER: Thank you, Your Honor.
                        UNITED STATES DISTRICT COURT

☐

15

1           Between April 16 of 2001 and January 9th of 2003,

Page 13

2  the defendant distributed and sold on several occasions
3  Oxycontin, hydrocodone and marijuana. During many of these
4  distributions or sales, the defendant received the assistance
5  of others to facilitate the distribution. All of the
6  distributions occurred in Hamilton County, Tennessee.

7        If this case had proceeded to trial the United
8  States would offer proof through testimony of law enforcement
9  agents and others that the defendant distributed these
10  narcotics, at least 16 distributions by the defendant were
11  monitored and recorded by law enforcement.

12        All of the narcotics were submitted to the TBI crime
13  lab and all proved positive for the presence of controlled
14  substance.

15        On January 9th, 2003, the defendant attempted to
16  purchase 53 pounds of marijuana from an undercover police
17  officer in Sequatchie County, Tennessee. There is a chart in
18  the plea agreement, Your Honor, which shows the various
19  distributions and the dates on which they occurred. For
20  example, on April 16 of 2001 the defendant distributed Xanax
21  and marijuana, the officer involved would have been Lee Wolff.
22  And, for example, on September 17 of 2002, the defendant
23  distributed Oxycontin and the officer involved in that would
24  have been Todd Floyd. And that entire chart in there, Your
25  Honor, shows the various distributions which occurred.

UNITED STATES DISTRICT COURT

16

1        As part of the plea agreement, the parties agree
2  that the defendant conspired with others to distribute
3  Oxycontin, hydrocodone and marijuana, and that would have been
4  the substance of the government's proof, Your Honor.

5          THE COURT:  All right.  Mr. Steakley, did you hear
6    what Mr. Piper said about the facts there?
7               THE DEFENDANT:  Yes, sir.
8               THE COURT:  And are those facts true?
9               THE DEFENDANT:  Very true, sir.
10              THE COURT:  And are you offering to plead guilty
11   because you're guilty?
12              THE DEFENDANT:  I'm guilty.  Very guilty.
13              THE COURT:  Okay.  The Court finds that this
14   defendant is competent and that he is capable of entering an
15   informed plea.  The Court finds that his plea is voluntary,
16   knowledgeable and it is supported by an independent basis in
17   fact which does indeed contain all of the essential elements of
18   the offense charged here in Count 1.  And he is adjudged guilty
19   on that count.
20              The Court will defer sentencing in this case as well
21   as acceptance or rejection of the plea agreement itself until
22   January 26th at 1:00.
23              MR. EBERLY:  January 6 or 26.
24              MR. PIPER:  Twenty-six.
25              THE COURT:  Twenty-six at 1:00.
                        UNITED STATES DISTRICT COURT

                                                            17

1               MR. EBERLY:  Thank you, Your Honor.
2               THE COURT:  Okay.  Anything further in this case at
3    this time.
4               MR. PIPER:  No.  Thank you, Your Honor.
5               THE COURT:  This court is in adjournment.
6
7

                        Page 15

 8

 9

 10

 11

 12

 13

 14

 15

 16

 17

 18

 19

 20

 21

 22

 23

 24

 25

UNITED STATES DISTRICT COURT